**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EUGENE E. WRIGHT and** | ) | **CIVIL ACTION** |
| **CAROLYN R. WRIGHT, husband and wife,** | ) | **NO.:**  1:18-CV-3 |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **MEADVILLE MEDICAL CENTER,** | ) | **ELECTRONICALLY FILED** |
| **STAIRWAYS BEHAVIORIAL HEALTH,** | ) | |
| **JOHN DOE and JACK DOE, individually** | ) | |
| **And in their capacity as officers for the** | ) | |
| **Meadville Police Department,** | ) | |
| **MICHAEL TAUTIN,** | ) | |
| **MEADVILLE POLICE DEPARTMENT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

**AND NOW,** come the Plaintiffs, Eugene E. Wright and Carolyn R. Wright, by and through their attorneys, THE LINDSAY LAW FIRM, P.C., Alexander H. Lindsay, Jr., Esquire, and Jessica L. Tully, Esquire and file the within Complaint in Civil Action, and in support thereof, aver the following:

## I. INTRODUCTION

1.      This is a civil action at law to redress the deprivation under color or statue, ordinance, regulation, custom, or usage of a right, privilege, and immunity, secured to the Plaintiffs by the Fourteenth Amendment to the Constitution of the United States, arising under Title 42 of the United States Code § 1983.

## II. JURISDICTION AND VENUE

2.      This action arises under 42 U.S.C. § 1983.  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and § 1343 and the Fourteenth Amendment to the United States Constitution.  This Court further has supplemental jurisdiction to hear state claims of Plaintiff pursuant to 28 U.S.C. § 1367(a).

3.      Venue is present in the Western District of Pennsylvania as this is the district where the cause of action arose, the district where the transactions and occurrences took place out of which the cause of action arose, and is a district in which Defendants regularly conduct activity.

## III. PARTIES

4.      Plaintiff Eugene E. Wright is an adult individual residing at 957 F Street, Meadville, Crawford County, PA 16335, is the husband of Carolyn R. Wright, and was and still is a citizen of the United States and the Commonwealth of Pennsylvania.

5.      Plaintiff Carolyn R. Wright is an adult individual residing at 957 F Street, Meadville, Crawford County, PA 16335, is the wife of Plaintiff Eugene E. Wright, and was and still is a citizen of the United States and the Commonwealth of Pennsylvania.

6.      Defendant Meadville Medical Center is an independent community hospital in Crawford County with an address of 751 Liberty Street, Meadville, PA 16335.

7.      Defendant Meadville Medical Center was responsible for the hiring, retention, training, supervision, and discipline of subordinate hospital employees and had

the duty to ensure that all hospital employees were qualified to serve at the hospital and to ensure that the hospital employees were properly trained, supervised, and disciplined.

8.    Defendant Stairways Behavioral Health is a non-profit that operates a crisis and counseling center in Crawford County and has an administrative office at 2185 West 8th Street, Erie, Erie County, PA 16505.

9.    Defendant Stairways Behavioral Health was responsible for the hiring, retention, training, supervision, and discipline of subordinate employees and had the duty to ensure that all employees were qualified to serve at the crisis and counseling center and to ensure that the employees were properly trained, supervised and disciplined.

10.    Defendants John and Jack Doe are adult individuals with current unknown identities employed by the Defendant Meadville Police Department located at 894 Diamond Park Square, Meadville, Crawford County, PA 16335. They are sued in their individual capacities.

11.    Defendant Michael Tautin was responsible for the oversight and control of Meadville Police Department as its chief of police and had the duty to ensure that all officers were qualified to serve as police officers and to ensure that the officers were properly trained, supervised and disciplined and at all times material hereto acting under color of law.  Police Chief Tautin is sued in his individual capacity.

12.    Defendant Meadville Police Department is a police department that serves the City of Meadville within the Commonwealth of Pennsylvania in Crawford County with an address of 894 Diamond Park Square, Meadville, PA 16335.

### III. FACTUAL ALLEGATIONS

13.     On June 15, 2017 at about 1:45 p.m., Plaintiff Eugene E. Wright left his job as a customer service representative for Advance Auto Parts, located at 18249 Conneaut Lake Road, Meadville, PA 16335, after completing his six-hour shift.

14.     Plaintiff Mr. Wright traveled directly from Advance Auto Parts to his home, located at 957 F Street, Meadville, PA 16335, so he could take his dogs outside.

15.     After his dogs came back inside his home, Plaintiff Mr. Wright picked up his son's lunchbox, so he could drive it and his son to his son's job as a machine operator at C&J Industries.

16.     As Plaintiff Mr. Wright was walking outside his home to reach his vehicle, he saw two officers from Defendant Meadville Police Department and Robin Dowling, Executive Director of Defendant Stairways Behavioral Health, standing beside his vehicle.

17.     Plaintiff Mr. Wright did not know why the police officers and Ms. Dowling from the crisis center were at his home. Plaintiff Mr. Wright said, "Good afternoon" to the three individuals.

18.     One of the Defendant Meadville Police Department officers asked Plaintiff Mr. Wright if he was Eugene Wright. Plaintiff Mr. Wright said his name was Eugene Wright.

19.     Neither the police officers nor Ms. Dowling, the crisis center employee, checked Plaintiff Mr. Wright's ID or social security card to verify Plaintiff Mr. Wright's identity.

20.     One of the police officers then asked Plaintiff Mr. Wright where he was going, to which Plaintiff Mr. Wright explained that he needed to pick up his son and take his son to work.

21.     The police officer responded that Plaintiff Mr. Wright wasn't going anywhere.

22.     Plaintiff Mr. Wright was confused as to what was happening and asked the police officers and Ms. Dowling from the crisis center if there was a problem.

23.     One of the police officers said that at 10 a.m., earlier that day, Plaintiff Mr. Wright had been in an orthopedic doctor's office threatening to hurt himself and other people.

24.     Plaintiff Mr. Wright told the officers and Ms. Dowling from the crisis center that they were mistaken because Plaintiff Mr. Wright had been at his job at Advance Auto Parts at 10 a.m. earlier that day.

25.     Plaintiff Mr. Wright asked the police officers and Ms. Dowling from the crisis center to call Advance Auto Parts to verify that Plaintiff Mr. Wright had been at work that morning, but the police officers and Ms. Dowling from the crisis center refused.

26.     One of the police officers said to Plaintiff Mr. Wright, "We have the right person."

27.     Ms. Dowling from Defendant Stairways Behavioral Health explained to Plaintiff Mr. Wright that she worked for the crisis center in Meadville.

28.     One of the police officers frisked Plaintiff Mr. Wright's body and handcuffed Plaintiff Mr. Wright's hands behind his back while Plaintiff Mr. Wright repeatedly told the police officer that he had the wrong person.

29.     Plaintiff Mr. Wright repeatedly requested that he be able to show his ID and social security card to prove that he was not the person the officers and Ms. Dowling from the crisis center were looking for.

30.     Plaintiff Mr. Wright also repeatedly requested that the three individuals call his employer, Advance Auto Parts, to verify that he had been at work earlier that day.

31.     Plaintiff Mr. Wright asked one of the police officers if Plaintiff Mr. Wright could call his daughter to ask if she would pick up his son to take him to work. One of the officers told Plaintiff Mr. Wright that Plaintiff Mr. Wright could not call his daughter.

32.     One of the police officers directed Plaintiff Mr. Wright into the back of the police vehicle, where Plaintiff Mr. Wright was told he was being taken to Defendant Meadville Medical Center.

33.     Plaintiff Mr. Wright remained handcuffed behind his back in the police vehicle and repeatedly told the officers they had the wrong person and requested that they check his ID and social security information.

34.     One of the police officers insisted to Plaintiff Mr. Wright that they had the right person.

35.     Once at Defendant Meadville Medical Center, Plaintiff Mr. Wright was placed in examination room number 5.

36.     One of the police officers took the handcuffs off Plaintiff Mr. Wright.

37.     The two police officers and Ms. Dowling from the crisis center stayed in the room with Plaintiff Mr. Wright.

38.     Ms. Dowling from the crisis center then insisted to Plaintiff Mr. Wright while they waited for hospital personnel to enter the room that Plaintiff Mr. Wright had been the

individual at the orthopedic doctor's office earlier that day who had threatened to hurt himself and other people.

39.     Joseph A. Montibeller, a doctor from Defendant Meadville Medical Center came into the room, and Plaintiff Mr. Wright told Dr. Montibeller that Plaintiff Mr. Wright had not been at an orthopedic doctor's office earlier that day making threats because Plaintiff Mr. Wright had been at work.

40.     Plaintiff Mr. Wright asked Dr. Montibeller to call Advance Auto Parts to verify that Plaintiff Mr. Wright had been at work earlier that day, but the doctor refused.

41.     Plaintiff Mr. Wright repeatedly told Dr. Montibeller that he had the wrong person and asked the doctor to check his ID and social security card.

42.     Dr. Montibeller did not check Plaintiff Mr. Wright's identification even though Plaintiff Mr. Wright had previously been a patient at Defendant Meadville Medical Center, so the hospital had medical records with Plaintiff Mr. Wright's correct identification information.

43.     Dr. Montibeller told Plaintiff Mr. Wright that when a person has mental problems and loses his temper, sometimes that person cannot remember doing so. Dr. Montibeller told Plaintiff Mr. Wright that he believed that was the case with Plaintiff Mr. Wright.

44.     Plaintiff Mr. Wright then took his wallet out of his pocket and threw it at one of the police officers because no one was willing to verify his identification information.

45.     Plaintiff Mr. Wright then asked the officer to look at his driver's license and social security card to verify that Plaintiff Mr. Wright was not the individual the officers had been looking for.

46.     The police officer then told Plaintiff Mr. Wright again, "We have the right person."

47.     Dr. Montibeller from Defendant Meadville Medical Center ordered a blood test of Plaintiff Mr. Wright, which Plaintiff Mr. Wright refused.

48.     A nurse named Joshua (last name unknown) came into the examination room carrying two needles. Nurse Joshua explained to Plaintiff Mr. Wright that Dr. Montibeller had ordered Plaintiff Mr. Wright to be injected with a chemical sedation of Intramuscular (hereinafter "IM") Haldol and IM Ativan. Haldol is an antipsychotic medication, and Ativan is a benzodiazepine used to treat anxiety disorders.

49.     Plaintiff Mr. Wright told nurse Joshua that he did not want to be injected with drugs and repeatedly told nurse Joshua for about 10 minutes that nurse Joshua had the wrong person at the hospital.

50.     Nurse Joshua did not check Plaintiff Mr. Wright's identification even though Plaintiff Mr. Wright said nurse Joshua was mistaken.

51.     One of the police officers then told Plaintiff Mr. Wright that if he didn't agree to receive the shots, the police officers would hold Plaintiff Mr. Wright down so that nurse Joshua could inject Plaintiff Mr. Wright with IM Haldol and IM Ativan.

52.     Plaintiff Mr. Wright did not want to be held down by the police officers but was given no choice in the matter, so he eventually permitted nurse Joshua to administer him the two shots of IM Haldol and IM Ativan.

53.     The drugs that Plaintiff Mr. Wright were given were against his will and were ordered for the specifications of the wrong individual.

54.     According to Plaintiff Mr. Wright, after that "things were starting to get pretty fuzzy" and that he doesn't remember how much time he spent at the hospital after IM Haldol and IM Ativan were injected.

55.     Plaintiff Mr. Wright's daughter, Nicole Curnutt, arrived at Defendant Meadville Medical Center and saw two police officers were outside her father's examination room.

56.     Ms. Curnutt explained that there had been a mistake because her father had been at work earlier that day.

57.     The hospital Emergency Room (hereinafter "ER") staff then looked into Plaintiff Mr. Wright's medical records and saw there was no record of Plaintiff Mr. Wright signing in at the orthopedic doctor's office earlier that day.

58.     The hospital ER staff researched the issue further and found that there was indeed a second patient who was also named Eugene Wright who was at the orthopedic doctor's officer earlier that day and made threats to hurt himself and other people.

59.     The ER staff found that when the orthopedic doctor's office called the crisis center, the supervisor from the crisis center did not ask for the patient Eugene Wright's birthday, so they made an incorrect assumption that the patient who was making threats was Plaintiff Mr. Wright.

60.     A few minutes later, one of the police officers explained to Ms. Curnutt that that there had been another individual named Eugene Wright who had threatened to hurt himself and other people.

61.     The police officer admitted to Ms. Curnutt that the individual who was making threats earlier that day was not Plaintiff Mr. Wright.

62.     The police officer said he assumed that they had the correct Eugene Wright once he heard the name and did not verify the address with the orthopedic doctor's office, which had the correct patient's address and identification information.

63.     The police officer then apologized to Ms. Curnutt, shook Plaintiff Mr. Wright's hand, and apologized again and left.

64.     Dr. Montibeller, who had treated Plaintiff Mr. Wright, spoke to Ms. Curnutt and Plaintiff Mr. Wright and explained what medication he had ordered to be given to Plaintiff Mr. Wright and what effect the drugs could have on him.

65.     Dr. Montibeller apologized to Plaintiff Mr. Wright and Ms. Curnutt for mistaking his identity and then left the room.

66.     Nurse Joshua tried to take Plaintiff Mr. Wright's blood pressure, however the machine was not working properly, so Plaintiff Mr. Wright told nurse Joshua that he wanted to go home.

67.     An administrative representative from Defendant Meadville Medical Center then entered Plaintiff Mr. Wright's examination room and apologized.

68.     The representative presented a gift card to Montana's Rib and Chop House for $50.00 to Plaintiff Mr. Wright, apologized again, and then left the examination room.

69.     Plaintiff Mr. Wright's wife, Carolyn, arrived at the hospital between 3:00 and 3:30 p.m. to take Plaintiff Mr. Wright home.

70.     Plaintiff Mr. Wright does not remember his wife, Plaintiff Mrs. Wright, arriving at the hospital.

71.     Plaintiff Mr. Wright does not remember leaving the hospital.

72.     Plaintiff Carolyn Wright took Plaintiff Mr. Wright home from the hospital at about 5:30 p.m. and told Plaintiff Mr. Wright to lay down on the couch

73.     Plaintiff Mr. Wright does not remember the 12-14 hours after he was injected with IM Haldol and IM Ativan at the hospital.

74.     Two employees from Defendant Stairways Behavioral Health came to the Wright home later that evening between 6:30 p.m. and 7:30 p.m. and asked Plaintiff Mrs. Wright how Plaintiff Mr. Wright was doing.

75.     Plaintiff Mrs. Wright told the two employees from Defendant Stairways Behavioral Health that Plaintiff Mr. Wright did not know who he was or where he was at the moment due to the drugs that had been injected into him.

76.     Plaintiff Mr. Wright also came to the door and asked who was at the door. Plaintiff Mrs. Wright told him it was it was employees from the crisis center.

77.     The following day, Plaintiff Mr. Wright was sitting on his front porch when two employees from Defendant Stairways Behavioral Health's crisis center came to Plaintiff Mr. Wright's home.

78.     The employees from the Crisis Center presented Plaintiff Mr. Wright with a $25.00 gift card to Walmart.

79.     Plaintiff Mrs. Wright later told Plaintiff Mr. Wright that two employees from the crisis center had come to the door the night before, however Plaintiff Mr. Wright has no recollection of them being there.

80.     Since this incident, Plaintiff Mr. Wright sees a psychiatrist, Dr. Lee Spain, once per month.

81.   His psychiatrist increased Plaintiff Mr. Wright's medication dosage and has appointments with Plaintiff Mr. Wright more frequently than he did prior to this incident.

82.   Plaintiff Mr. Wright has been unable to sleep and was prescribed Lunesta, a sedative, to help him sleep by his psychiatrist.

83.   Plaintiff Mr. Wright has had difficulty eating due to his nervous stomach and has lost 40 pounds since the date of the incident.

84.   Mr. Wright does not feel comfortable in his home, no longer trusts police officers, and does not want to be left alone in his own home.

## COUNT I

### *EUGENE E. WRIGHT v. JOHN DOE and JACK DOE*

**Violation of 42 U.S.C. § 1983 (Violation of Fourth Amendment and Fourteenth Amendment):  False Arrest/False Imprisonment**

85.   The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

86.   An arrest without probable cause is a constitutional violation actionable under section 1983.

87.   Defendants John Doe and Jack Doe detained Plaintiff Mr. Wright knowing that their investigation was flawed and that they lacked probable cause to make the arrest and/or continue to detain him.

88.   Under an objective standard, a reasonable officer in the position of John Doe and Jack Doe would know that they did not have probable cause to arrest Plaintiff Mr. Wright without verification of his identity and address.

89.    Under a subjective standard, John Doe and Jack Doe actually knew that they did not verify Plaintiff Mr. Wright's address or identifying information before detaining him.

90.    When an officer lacks probable cause to make an arrest, there can be a Fourth Amendment claim for false imprisonment based on the detention pursuant to the arrest.

91.    There was no probable cause to support detaining Plaintiff Mr. Wright, where no arrest warrant had been issued and an examination of Plaintiff Mr. Wright's ID or social security card would have led any reasonable police officer to know that they had the wrong individual.

92.    John Doe and Jack Doe acted with deliberate indifference in arresting Plaintiff Mr. Wright without an arrest warrant and handcuffing him behind his back and forcing him to go to the hospital.

93.    John Doe and Jack Doe acted with deliberate indifference in not verifying the identity and address of the individual they were looking for before handcuffing Plaintiff Mr. Wright behind his back.

94.    The continual keeping of Plaintiff Mr. Wright handcuffed and in the backseat of a police cruiser constitutes false imprisonment and false arrest where within minutes the police should have verified his identity.

95.    Defendants acted knowingly, deliberately, and/or with reckless disregard of the truth in arresting the Plaintiff Mr. Wright.

96.     The aforementioned conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution of the United States, including a deprivation of liberty.

97.     The Defendants' acts were with malice and reckless disregard for Plaintiff's federally protected constitutional and civil rights.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants John Doe and Jack Doe in an amount in excess of the arbitrations limits, plus costs, attorney's fees, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.

## COUNT II

### *EUGENE E. WRIGHT v. MEADVILLE POLICE DEPARTMENT and MICHAEL TAUTIN*

**Violation of 42 U.S.C. § 1983 (Violation of Fourth Amendment and Fourteenth Amendment)  False Arrest/False Imprisonment — *Monell* Claim**

98.     The prior paragraphs are hereby incorporated by reference as though set forth in their entirety.

99.     In order to preserve the issue, Plaintiff Mr. Wright contends that *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), was erroneously decided to the extent that it held that the doctrine of respondeat superior does not apply to Section 1983 claims.

100.     Recognizing that this Court is bound by *Monell*, Plaintiff Mr. Wright avers that Defendant Meadville Police Department is liable for the violation of Plaintiff's Fourth

Amendment rights because it executed a policy and/or custom and/or practice that inflicted the injuries herein.

101.    Meadville Police Department's customs, policies, and practices were a direct cause of harm to Plaintiff Mr. Wright.

102.    Specifically, it is averred that Meadville Police Department has a custom, policy or practice to not verify the identity and address of an individual before detaining him and putting him under arrest.

103.    The custom, policy, and practice followed by Meadville Police Department were made with deliberate indifference to the constitutional rights of Plaintiff Mr. Wright and was objectively unreasonable to wit: unlawfully detaining and arresting individuals without verification of their identity.

104.    Meadville Police Department and Police Chief Michael Tautin also failed to adequately train and supervise its officers, which resulted in Plaintiff Mr. Wright's constitutional rights being violated.

105.    The Plaintiff believes and therefore avers that Chief Tautin had actual knowledge and acquiesced and condoned the detainment of Plaintiff Mr. Wright.

106.    Meadville Police Department had actual knowledge that the supervision and training of its officers was inadequate.

107.    Meadville Police Department's failure to properly train and supervise its officers regarding verification of identity deprived Plaintiff Mr. Wright of his Fourth Amendment rights.

108.    When a subordinate executes a government policy or custom and inflicts injury, then the governmental entity can be responsible under § 1983.

15

109.   "No one has ever doubted … that a municipality may be liable under Section 1983 for a single decision…whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481 (1986).

110.   It is believed and therefore averred that Police Chief Tautin was aware of the decision to detain Plaintiff Mr. Wright, and by either encouraging the arrest or silently acquiescing to the conduct, communicated a message of approval.

111.   Any reasonable officer would know that it is improper to arrest an individual without verification of his identity.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants Meadville Police Department and Michael Tautin in an amount in excess of the arbitrations limits, plus costs, attorney's fees, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.


**Count III**

***EUGENE E. WRIGHT v. MEADVILLE MEDICAL CENTER, STAIRWAYS BEHAVIORAL HEALTH, JOHN DOE, and JACK DOE***

**<u>Negligence</u>**

112.   Plaintiff Mr. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

113.   Defendants had a duty of care to Plaintiff Mr. Wright and breached it by failing to exercise reasonable care.

114.    Plaintiff Mr. Wright's mental suffering is directly traceable to the peril in which Defendants Meadville Medical Center, Stairways Behavioral Health, John Doe, and Jack Doe's negligence placed Plaintiff Mr. Wright.

115.    The Defendants John Doe and Jack Doe were negligent in the following particulars:

    a.  In failing to obtain specific information concerning the identity of the individual "Eugene Wright" who had been at an orthopedic doctor's office threatening to hurt himself and other people, such as address, birthdate, and social security number;

    b.  In failing to verify Plaintiff Mr. Wright's identification information;

    c.  In failing to conduct some rudimentary investigation concerning whether they had made a mistake identifying Plaintiff Mr. Wright when Plaintiff Mr. Wright repeatedly insisted that they had the wrong person;

    d.  In failing to contact Plaintiff Mr. Wright's employer, Advanced Auto Parts, to ask whether Plaintiff Mr. Wright had been at work earlier that day; and

    e.  In failing to verify with the orthopedic doctor's office the address of the patient who had been making threats earlier that day before putting handcuffs behind Plaintiff Mr. Wright's back and forcing him to go to the hospital, in light of his repeated insistence that he had made no such threats earlier in the day.

116.    The negligence of the Defendant Stairways Behavioral Health was as follows:

    a.  In failing to obtain specific information concerning the identity of the individual "Eugene Wright" who had been at an orthopedic doctor's office threatening to hurt himself and other people, such as address, birthdate and social security number;

    b.  In failing to verify Plaintiff Mr. Wright's identification information;

    c.  In failing to conduct some rudimentary investigation concerning whether they had made a mistake identifying Plaintiff Mr. Wright

when Plaintiff Mr. Wright repeatedly insisted that they had the wrong person;

d.  In failing to contact Plaintiff Mr. Wright's employer, Advanced Auto Parts, to ask whether Plaintiff Mr. Wright had been at work earlier that day; and

e.  In failing to verify with the orthopedic doctor's office the address of the patient and other identifying information of the patient who had been making threats earlier that day before encouraging police officers John and Jack Doe to put handcuffs behind Plaintiff Mr. Wright's back and forcing him to go to the hospital, in light of his repeated insistence that he had made no such threats earlier in the day.

117.   The Defendant Meadville Medical Center was negligent in the following particulars:

a.  By failing to verify with patient records and identification information that Plaintiff Mr. Wright had with him before forcing him to be injected with IM Haldol and IM Ativan;

b.  By failing to heed his repeated insistence that he was not the individual who had been making threats earlier that day in the orthopedic doctor's office;

c.  In enlisting the assistance of the attending police officers to restrain the Plaintiff Mr. Wright before forcing him to be injected with IM Haldol and IM Ativan;

d.  In failing to check their own hospital records concerning Plaintiff Mr. Wright, who had been a previous patient in the hospital, or ascertain whether he was correct in insisting that he was not the individual at the orthopedic doctor's office making threats;

e.  In failing to obtain Plaintiff Mr. Wright's consent before administering a psychotropic drugs to him; and

f.  In failing to advise Plaintiff Mr. Wright of the harmful side-effects of the psychotropic drugs which were administered to him.

118.   Plaintiff Mr. Wright has suffered physical harm as a result of Defendants' negligence, including;

    a.    A loss of 12-14 hours of his memory after being injected with IM Haldol and IM Ativan against his will;

    b.    Aggravation of his diagnosis of depression;

    c.    Anxiety;

    d.    Stress;

    e.    Difficulty sleeping;

    f.    Difficulty eating; and

    g.    Ongoing mental suffering.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants Meadville Medical Center, Stairways Behavioral Health, John Doe, and Jack Doe in an amount in excess of the arbitrations limits, plus costs, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.


**Count IV**

***EUGENE E. WRIGHT v. MEADVILLE MEDICAL CENTER, STAIRWAYS BEHAVIORAL HEALTH, JOHN DOE, and JACK DOE***

**<u>Intentional Infliction of Emotional Distress</u>**

118.   The prior paragraphs are incorporated herein by reference as if set forth fully at length.

119.   Defendants Meadville Medical Center, Stairways Behavioral Health, John Doe, and Jack Doe's conduct was extreme and outrageous, and they acted intentionally and recklessly to cause severe emotional distress to Plaintiff Mr. Wright.

120.   Defendants' conduct would cause an average member of the community to arouse his resentment against the Defendants and lead him to exclaim, "Outrageous!"

121.   Defendants' extreme and outrageous conduct includes:

    a.  Defendants did not verify Plaintiff Mr. Wright's identity by checking his ID or social security card that he had in his wallet;

    b.  Defendants did not verify Plaintiff Mr. Wright's identification after he repeatedly requested that they contact his employer, Advance Auto Parts;

    c.  Defendants John Doe and Jack Doe did not verify Plaintiff Mr. Wright's identification information after he repeatedly told them they had the wrong person before placing him under arrest and putting handcuffs behind his back;

    d.  Defendant Stairways Behavioral Health did not ask the orthopedic doctor's office for any other information about the patient who had made threats except his name and incorrectly assumed without verification that the patient was Plaintiff Mr. Wright;

    e.  Defendants John Doe and Jack Doe did not ask the orthopedic doctor's office for the address of the patient who had made threats and incorrectly assumed without verification that the patient was Plaintiff Mr. Wright;

    f.  Defendants John Doe, and Jack Doe did not verify Plaintiff Mr. Wright's identification after he repeatedly stated that they had the wrong person while he was transported against his will to Defendant Meadville Medical Center;

    g.  Defendant Meadville Medical Center did not verify with its patient records before ordering him to be injected with IM Haldol and IM Ativan;

    h.  One of the officers told Plaintiff Mr. Wright that the police officers would hold Plaintiff down for him to receive the two injections of IM Haldol and IM Ativan; and

    i.  Plaintiff Mr. Wright did not have a choice but to be injected with IM Haldol and IM Ativan by Defendant Meadville Medical Center even though the drugs were meant for a different individual.

122.   Plaintiff Mr. Wright has suffered physical harm as a result of Defendants' actions, including:

      a. A loss of 12-14 hours of his memory after being injected with IM Haldol and IM Ativan against his will;

      b. Aggravation of his diagnosis of depression;

      c. Anxiety;

      d. Stress;

      e. Difficulty sleeping;

      f. Difficulty eating; and

      g. Ongoing mental suffering.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants Meadville Medical Center, Stairways Behavioral Health, John Doe, and Jack Doe in an amount in excess of the arbitrations limits, plus costs, punitive damages, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.

## Count V

### *EUGENE E. WRIGHT v. MEADVILLE MEDICAL CENTER, STAIRWAYS BEHAVIORAL HEALTH, JOHN DOE, and JACK DOE*

### Negligent Infliction of Emotional Distress

123.   The prior paragraphs are incorporated herein by reference as if set forth fully at length.

124.   Plaintiff Mr. Wright's mental suffering as heretofore set forth is directly traceable to the peril in which the Defendants Meadville Medical Center, Stairways Behavioral Health, John Doe and Jack Doe negligently placed Plaintiff Mr. Wright.

125.   Plaintiff Mr. Wright has suffered physical harm as a result of the Defendants' negligence, including:

      a. A loss of 12-14 hours of his memory after being injected with IM Haldol and IM Ativan against his will;

      b. Aggravation of his diagnosis of depression;

      c. Anxiety;

      d. Stress;

      e. Difficulty sleeping;

      f. Difficulty eating; and

      g. Ongoing mental suffering.

126.   The Defendants, Meadville Medical Center, Stairways Behavioral Health, John Doe, and Jack Doe had a pre-existing duty to the Plaintiff among which were to protect him from invasion of privacy, and being wrongfully subjected to dangerous medical treatment;

127.   The Defendants herein breached their duty by taking Plaintiff Mr. Wright into physical custody and subjecting him to unwanted dangerous medical treatment.

WHEREFORE, showing these things, Plaintiff Eugene E. Wright respectfully requests this honorable court to enter judgement in his favor in an amount in excess of the arbitration limits, together with interests, and costs of this litigation together with any and all such other relief as this Honorable Court deems proper.   A JURY TRIAL IS DEMANDED.

**Count VI**

### *EUGENE E. WRIGHT v. MEADVILLE MEDICAL CENTER,*
### *JOHN DOE, and JACK DOE*

### <u>Assault</u>

128.    Plaintiff Mr. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

129.    Defendants Meadville Medical Center, John Doe, and Jack Doe intended to cause a harmful or offensive contact with Plaintiff Mr. Wright and caused Plaintiff Mr. Wright to be in imminent apprehension of such contact.

130.    Defendants used more than threatening words to put Plaintiff Mr. Wright in reasonable apprehension of physical injury because Defendants were in a position to carry out the threat immediately.

131.    Defendants' harmful or offensive contact caused Plaintiff Mr. Wright to be in reasonable apprehension of physical injury.

132.    Specifically, Defendants' harmful or offensive contact that caused Plaintiff Mr. Wright to be in reasonable apprehension of physical injury included:

      a.    Defendants John Doe and Jack Doe handcuffed Plaintiff Mr. Wright behind his back and forced him into a police vehicle to go to Defendant Meadville Medical Center against his will;

      b.    One of the police officers told Plaintiff Mr. Wright that the police officers would hold Plaintiff down for him to receive the injections of IM Haldol and IM Ativan; and

      c.    Plaintiff Mr. Wright did not have a choice but to be injected with IM Haldol and IM Ativan by Defendant Meadville Medical Center even though the drugs were meant for a different individual.

133.    The actions of the Defendants constituted willful misconduct.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants Meadville Medical Center, John Doe, and Jack Doe in an amount in excess of the arbitrations limits, plus costs, punitive damages, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.

## Count VII

### EUGENE E. WRIGHT v. MEADVILLE MEDICAL CENTER, JOHN DOE, and JACK DOE

### Battery

134.   Plaintiff Mr. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

135.   Defendants touched Plaintiff Mr. Wright in a way that was harmful and offensive without his consent.

136.   Defendants intended to cause a harmful or offensive contact with Plaintiff Mr. Wright or put him in imminent apprehension of such a contact, and the offensive contact with Mr. Wright resulted.

137.   Specifically, Defendants acted with an intent to cause a harmful or offensive contact, when:

   a.   Defendants John Doe and Jack Doe handcuffed Plaintiff Mr. Wright behind his back and transported him to Defendant Meadville Medical Center against his will;

   b.   Plaintiff Mr. Wright remained handcuffed until he was in an exam room at Defendant Meadville Medical Center;

   c.   A Defendant Meadville Medical Center nurse injected Plaintiff Mr. Wright with IM Haldol and IM Ativan that were meant for another individual other than Plaintiff Mr. Wright without his consent; and

    d.  The actions of Defendants constitute willful misconduct.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants Meadville Medical Center, John Doe, and Jack Doe in an amount in excess of the arbitrations limits, plus costs, punitive damages, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.


### Count VIII

### *EUGENE E. WRIGHT v. STAIRWAYS BEHAVIORAL HEALTH, JOHN DOE, and JACK DOE*

### <u>Invasion of Privacy</u>

138.   Plaintiff Mr. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

139.   One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person.

140.   The Defendants Stairways Behavioral Health and Defendants John Doe and Jack Doe intruded on the seclusion of Plaintiff Mr. Wright's property, which is substantial and highly offensive to a reasonable person.

141.   An unlawful arrest may constitute an invasion of privacy.

142.   The Defendants Stairways Behavioral Health, John Doe and Jack Doe did not verify Plaintiff Mr. Wright's identity before he was handcuffed behind his back and forced into the back of a police vehicle.

143.   The cause of action for invasion of privacy, based on intrusion of seclusion, does not depend upon any publicity given to the persons whose interests are invaded or to his affairs.

144.   A reasonable person would be caused mental suffering, shame, or humiliation based on the actions of the Defendants herein more fully described above.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants John Doe and Jack Doe in an amount in excess of the arbitrations limits, punitive damages, plus costs, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.

## Count VI

### *EUGENE E. WRIGHT v. STAIRWAYS BEHAVIORAL HEALTH, JOHN DOE, and JACK DOE*

### False Arrest/False Imprisonment

145.   The prior paragraphs are incorporated by reference as if fully set forth herein.

146.   The elements of false imprisonment are (1) the detention of another person and (2) the unlawfulness of such detention.

147.   A defendant is liable for false imprisonment when he causes the false arrest of another person.

148.   A false arrest is defined as either an arrest made without probable cause or an arrest made by a person without privilege to do so.

149.   Probable cause exists when the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has

reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

150.    Where the officer lacks probable cause to make an arrest, there can be a Fourth Amendment claim for false imprisonment based on the detention pursuant to the arrest.

151.    The detention of Plaintiff Mr. Wright was conducted without a warrant.

152.    The Defendants Stairways Behavioral Health, John Doe, and Jack Doe did not have probable cause sufficient to warrant a man of reasonable caution in the belief that Plaintiff Mr. Wright was the individual who had made threats earlier that day.

153.    The Defendants Stairways Behavioral Health, John Doe, and Jack Doe did not act with reasonable caution when they detained the wrong individual, handcuffed Plaintiff Mr. Wright behind his back, and forced him to go to the Meadville Medical Center.

154.    Defendants John Doe and Jack Doe did not act with reasonable caution when the officers did not verify Plaintiff Mr. Wright's identification information.

155.    Defendants John Doe and Jack Doe did not act with reasonable caution when the officers did not inquire as to whether they had made a mistake when Plaintiff Mr. Wright repeatedly said they had the wrong person.

156.    The Defendants Stairways Behavioral Health, John Doe, and Jack Doe did not act with reasonable caution when the officers did not contact Plaintiff Mr. Wright's employer, Advance Auto Parts, to ask whether Plaintiff Mr. Wright had been at work earlier that day.

157.    The Defendants Stairways Behavioral Health, Defendants John Doe and Jack Doe did not act with reasonable caution when they did not verify with the orthopedic

doctor's office the address of the patient who had been making threats earlier that day before putting handcuffs behind Plaintiff Mr. Wright's back and forcing him to go to the hospital.

158.   The Defendants Stairways Behavioral Health, Defendants John Doe, and Jack Doe acted with deliberate indifference when they detained Plaintiff Mr. Wright.

159.   The Defendants Stairways Behavioral Health, Defendants John Doe, and Jack Doe's actions constituted willful misconduct as any reasonable officer should have or would have verified the identity of the individual he was detaining.

160.   The continual keeping of Plaintiff Mr. Wright handcuffed and in the backseat of police cruisers and transporting him to the hospital constitutes false imprisonment and false arrest where within minutes the police officers should have known they had the wrong individual.

WHEREFORE, Plaintiff Eugene E. Wright demands judgment against the Defendants John Doe and Jack Doe in an amount in excess of the arbitrations limits, plus costs, punitive damages, and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.


## Count IX

### *CAROLYN R. WRIGHT v. MEADVILLE MEDICAL CENTER, STAIRWAYS BEHAVIORAL HEALTH, JOHN DOE, and JACK DOE*

### Loss of Consortium

161.   Plaintiff Mrs. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

162.   Plaintiff Mrs. Wright incorporates by reference the prior paragraphs as if fully set forth herein.

163.   Defendants Meadville Medical Center, Stairways Behavioral Health, John Doe, and Jack Doe caused the negligent injury to Plaintiff Mr. Wright that gives Plaintiff Mrs. Wright a legal cause of action to recover damages for that interference.

164.   As a result of these incidents and the aforementioned injuries incurred by Eugene Wright, Plaintiff Carolyn Wright has suffered the loss of her husband's companionship, society, cooperation, affection, assistance, and conjugal fellowship.

WHEREFORE, Plaintiff Carolyn R. Wright demands judgment against the Meadville Medical Center, Stairways Behavioral Health, John Doe, and Jack Doe in an amount in excess of the arbitrations limits, plus costs and such relief as the Court may deem proper.   A JURY TRIAL IS DEMANDED.

Respectfully submitted:

THE LINDSAY LAW FIRM, P.C.,

*s/Alexander H. Lindsay, Jr.*
Alexander H. Lindsay, Jr., Esquire
Pa. Supreme Court Id. No. 15088

*s/Jessica L. Tully*
Jessica L. Tully, Esquire
Pa. Supreme Court Id. No. 324691

110 East Diamond Street, Suite 301
Butler, Pennsylvania 16001
Phone: (724) 282-6600
Fax:  (724) 282-2672